**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
CASE NO. 12-22057-CIV-SEITZ/SIMONTON

CHANEL, INC.,

        Plaintiff,

vs.

7PERFECTHANDBAGS.COM, *et al.*,

        Defendants.

_____/

## ORDER GRANTING PLAINTIFF'S FOURTH MOTION FOR ENTRY OF FINAL DEFAULT JUDGMENT AGAINST DEFENDANTS 215-333 AND CLOSING CASE

THIS MATTER is before the Court upon Plaintiff's Fourth Motion for Entry of Final Default Judgment Against Defendants 215-333 [DE 207]. Plaintiff, Chanel, Inc. ("Chanel" or "Plaintiff") moves for final default judgment against Defendants 215-333, the Partnerships or Unincorporated Associations identified on Schedule "A" hereto (collectively "Defendants")[1] for alleged violations of the Lanham Act, codified at 15 U.S.C. §§ 1114, 1116, 1121, 1125(a), and 1125(d). As Defendants have failed to appear, plead or otherwise defend this action, and given the documentary evidence submitted in support of its motion, the Court shall grant Plaintiff's Fourth Motion for Final Default Judgment.

---

[1] Plaintiff's Seventh Amended Complaint [DE 189] filed against Defendants 215-333 included additional Subject Domain Names operated by Defendants 132 and 155, specifically, Subject Domain Names mensjewellerystores.com (Defendant 132) and igogoshopping.com (Defendant 155). Defendant 132 - chanel-necklace.net and Defendant 155 - caps-trade.com a/k/a/ vip-sell.com are subject to the Court's October 28, 2013 Final Default Judgment and Permanent Injunction Against Defendants 67-214. [DE 206, entered on the docket October 29, 2013.] Plaintiff's Fourth Motion for Entry of Final Default Judgment Against Defendants 215-333 requests that this Court enter default judgment against the Subject Domain Names mensjewellerystores.com (Defendant 132) and igogoshopping.com (Defendant 155) identified on Schedule "A" hereto.

## I.      FACTUAL AND PROCEDURAL BACKGROUND

Chanel, Inc. ("Chanel") is a corporation duly organized under the laws of the State of New York with its principal place of business in the United States located at Nine West 57th Street, New York, New York 10019. (Seventh Amended Complaint [DE 189 at ¶ 4].) Chanel is engaged in the promotion, distribution, and sale in United States interstate commerce of high quality goods under the Chanel Marks. (Declaration of Adrienne Hahn Sisbarro in Support of Plaintiff's Eighth *Ex Parte* Application for Entry of Temporary Restraining Order, Preliminary Injunction, and Order Restraining Transfer of Assets Tied to the Counterfeiting Operation ("Hahn Decl.") ¶¶ 4, 5 [DE 177-1].) Chanel is, and at all times relevant hereto has been, the owner of all rights in and to the following Federally registered trademarks:

| Trademark | Registration Number | Registration Date | Class(es)/Goods |
|---|---|---|---|
| CHANEL | 0,612,169 | September 13, 1955 | (Int'l Class: 14) Necklaces |
| CHANEL | 0,626,035 | May 1, 1956 | (Int'l Class: 18) Women's handbags |
| CHANEL | 0,906,262 | January 19, 1971 | (Int'l Class: 25) Coats, suits, blouses, and scarves |
| CHANEL | 0,955,074 | March 13, 1973 | (Int'l Class: 14) Watches |
| ⊙ | 1,241,264 | June 7, 1983 | (Int'l Class: 25) Suits, jackets, skirts, dresses, pants, blouses, tunics, sweaters, cardigans, tee-shirts, coats, raincoats, scarves, shoes and boots |

| Trademark | Registration Number | Registration Date | Class(es)/Goods |
|---|---|---|---|
| CHANEL | 1,241,265 | June 7, 1983 | (Int'l Class: 25) Suits, jackets, skirts, dresses, pants, blouses, tunics, sweaters, cardigans, coats, raincoats, scarves, shoes and boots |
| ⊚ | 1,347,094 | July 9,1985 | (Int'l Class: 3) A full line of perfumery, cosmetics, and toiletries |
| CHANEL | 1,348,842 | July 16, 1985 | (Int'l Class: 3) Full line of perfumery, cosmetics and toiletries |
| ⊚ | 1,501,898 | August 30, 1988 | (Int'l Class: 6) Keychains<br><br>(Int'l Class: 14) Costume jewelry<br><br>(Int'l Class: 16) Gift wrapping paper<br><br>(Int'l Class: 25) Blouses, shoes, belts, scarves, jackets, men's ties<br><br>(Int'l Class: 26) Brooches, buttons for clothing |
| CHANEL | 1,510,757 | November 1, 1988 | (Int'l Class: 9) Sunglasses |
| ⊂⊃ | 1,654,252 | August 20, 1991 | (Int'l Class: 9) Sunglasses |
| CHANEL | 1,733,051 | November 17, 1992 | (Int'l Class: 18) Leather goods; namely, handbags, wallets, travel bags, luggage, business and credit card cases, change purses, tote bags, cosmetic bags sold empty, and garment bags for travel |
| ⊂⊃ | 1,734,822 | November 24, 1992 | (Int'l Class: 18) Leather goods; namely, handbags, wallets, travel bags, luggage, business card cases, change purses, tote bags, and cosmetic bags sold empty |

| Trademark | Registration Number | Registration Date | Class(es)/Goods |
|---|---|---|---|
| J12 | 2,559,772 | April 9, 2002 | (Int'l Class: 14) -Timepieces; namely, Watches, and Parts Thereof |
|  | 3,025,934 | December 13, 2005 | (Int'l Class: 18) – Handbags |
|  | 3,025,936 | December 13, 2005 | (Int'l Class: 9) Eyeglass frames, sunglasses<br><br>(Int'l Class: 25) Gloves, swimwear<br><br>(Int'l Class: 26) Hair accessories namely barrettes |
| CHANEL | 3,133,139 | August 22, 2006 | (Int'l Class: 14) Jewelry and watches |
| CHANEL | 3,134,695 | August 29, 2006 | (Int'l Class: 9) Ski goggles, eyeglass frames, mobile phone straps, sunglasses, sunglass parts, cases for spectacles and sunglasses<br><br>(Int'l Class: 20) Mirrors, namely personal compacts and hand-held mirrors<br><br>(Int'l Class: 25) Ski boots, sun visors, suspenders, sweatbands, swimwear, stockings and socks<br><br>(Int'l Class: 26) Hair accessories namely barrettes and pony-tail holders<br><br>(Int'l Class: 28) Bags specially adopted for sports equipment, basketballs, kites, skis, ski polls, tennis rackets, tennis balls, tennis racket covers, golf clubs, golf bags, snow boards |
| CHANEL | 3,890,159 | December 14, 2010 | (Int'l Class: 9) Cases for telephones<br><br>(Int'l Class: 16) Temporary tattoos<br><br>(Int'l Class: 18) Key cases |

| Trademark | Registration Number | Registration Date | Class(es)/Goods |
|-----------|---------------------|-------------------|-----------------|
| ℭℭ | 4,074,269 | December 20, 2011 | (Int'l Class: 9) Protective covers for portable electronic devices, handheld digital devices, personal computers and cell phones<br><br>(Int'l Class: 16) Temporary tattoos<br><br>(Int'l Class: 18) Key cases |

(the "Chanel Marks") which are registered on the Principal Register of the United States Patent and Trademark Office and are used in connection with the manufacture and distribution of high quality goods in the categories identified above. (Hahn Decl. ¶ 4; *see also* United States Trademark Registrations of the Chanel Marks at issue ("Chanel Trademark Registrations") attached as Composite Exhibit A to the Hahn Decl. [DE 177-2])

As set forth more fully in Plaintiff's Eighth *Ex Parte* Application for Entry of Temporary Restraining Order, Preliminary Injunction, and Order Restraining the Transfer of Assets Tied to the Counterfeiting Operation [DE 177][2], and the Declarations of Chanel's representative Adrienne Hahn Sisbarro filed in support of Plaintiff's Eighth Application for Temporary Restraining Order [DE 177-1], Defendants are promoting, selling, offering for sale and distributing goods bearing counterfeits of Plaintiff's trademarks within this Judicial District through various fully interactive commercial Internet websites and commercial e-stores in direct contravention of Chanel's rights.[3] (*See* web page printouts from each of the Defendants' websites

---

[2] Plaintiff's Eighth *Ex Parte* Application for Temporary Restraining Order, Preliminary Injunction, and Order Restraining Transfer of Assets Tied to the Counterfeiting Operations, together with supporting exhibits and declarations are incorporated herein by reference (the "Eighth Application for Temporary Restraining Order"). [DE 177.]

[3] Plaintiff's Statements of Facts regarding its rights and Defendants' infringing activities are outlined in the Seventh Amended Complaint in Paragraphs 62-87 [DE 189] and in Plaintiff's

and e-stores showing each Defendants' advertisements and offers to sell counterfeit Chanel branded products attached as Composite Exhibit B to the Hahn Decl. [DE 177-3 through DE 177-9] (hereafter, "Defendants' Websites and E-Stores").) As such, Defendants are the active, conscious, and dominant forces behind the promotion, advertisement, distribution, offering for sale, and sale of handbags, wallets, shoes, boots, belts, scarves, sunglasses, watches, cases for telephones, protective covers for portable electronic devices, including cell phones, cosmetics, and costume jewelry, including necklaces, bracelets, earrings and rings using trademarks which are exact copies of the Chanel Marks (the "Counterfeit Goods").  (Seventh Amended Complaint ¶¶ 7, 56, 71-73, 75-78, 93-94; *see also* Hahn Decl. ¶¶ 9-13, and Defendants' Websites and E-Stores; Declaration of Eric Rosaler in Support of Plaintiff's Eighth *Ex Parte* Application for Temporary Restraining Order (hereafter, "Rosaler Decl.") [DE 177-12 through DE 177-19]; Declaration of Kathleen Burns in Support of Plaintiff's Eighth *Ex Parte* Application for Temporary Restraining Order (hereafter, "Burns Decl.") [DE 177-20 through DE 177-24]; Declaration of Stephen M. Gaffigan in Support of Plaintiff's Eighth *Ex Parte* Application for Temporary Restraining Order (hereafter, "Gaffigan Decl.") ¶¶ 2, 3 [DE 177-25 through 177-28]; *see also* a chart outlining the Registrant and Administrative and Contact information identified on the WHOIS domain registration records for the Group VIII Subject Domain Names attached as Composite Exhibit A to the Gaffigan Decl.)

Plaintiff retained Eric Rosaler ("Rosaler"), an officer of AED Investigations, Inc., a licensed private investigative firm, and Kathleen Burns ("Burns"), a partner of Aries Claims Services, a licensed private investigative firm, to investigate the suspected sales of counterfeit Chanel branded products by the Defendants. (*See* Gaffigan Decl. ¶ 4; Rosaler Decl. ¶ 3; Burns

---

Eighth Application for Temporary Restraining Order [DE 177] and are incorporated herein by reference.

Decl. ¶ 3.) Rosaler accessed commercial Internet websites operating under certain Group VIII Subject Domain Names, and went through the purchasing process[4] for various products, most of which bore counterfeits of, at least, one of the Chanel Marks at issue in this action. (*See* Rosaler Decl. ¶ 4].) Following submission of his orders, Rosaler received information for finalizing payment for each of the items ordered via PayPal and/or bank transfer to Defendants' respective PayPal and/or bank accounts. (*Id.*)

Additionally, Burns, accessed the fully interactive commercial e-stores identified on Schedule "A" hereto, and went through the purchasing process for various products, most of which bore counterfeits of, at least, one of the Chanel Marks at issue in this action. (*See* Burns Decl. ¶ 4 and Comp. Ex. A thereto.)   Following submission of her orders, Burns received information for finalizing payment for each of the items ordered via PayPal. (*Id.*)

Chanel's representative Adrienne Hahn Sisbarro, accessed the commercial Internet websites bagsdotcome.com, diytrade88.com, nicediytrade.com, mensjewellerystores.com, and hotshoptrade.com, and captured the "Payment" pages providing the bank transfer information for finalizing payments for purchases identifying the bank accounts for each website. (See Hahn Decl. ¶ 12 and Comp. Ex. D thereto.)

Ms. Hahn Sisbarro reviewed and visually inspected Defendants' Websites and E-Stores, as well as pictures of items bearing the Chanel Marks offered for sale by Defendants via their Internet websites and e-stores operating under the Group VIII Subject Domain Names and E-Stores, and likewise determined the products were not genuine Chanel goods. (See Hahn Decl. ¶ 13].)

---

[4] Rosaler intentionally did not finalize his purchases from the Internet websites operating under the remaining Subject Domain Names so as to avoid contributing funds to Defendants' coffers.

On May 23, 2013, Plaintiff filed its *Ex Parte* Motion for Leave to File Seventh Amended Complaint against Defendants 215-333 [DE 170] simultaneously with its Eighth *Ex Parte* Application for Entry of Temporary Restraining Order, Preliminary Injunction, and Order Restraining Transfer of Assets Tied to the Counterfeiting Operation. [DE 171.] On May 30, 2013, Plaintiff filed its Notice of Striking Docket Entry 171 [DE 174] due to the Court's Order Granting Plaintiff's Motion to Amend the Court's Order Granting Second Motion for Alternate Service of Process [DE 165], that required Plaintiff to secure leave for alternate service as to any additional defendants before making applications for temporary restraining orders against those defendants. On June 4, 2013, Plaintiff filed its *Ex Parte* Motion in Further Support of Plaintiff's Motion to Amend the Court's Order Granting Second Motion for Alternate Service and Memorandum of Law in Support Thereof [DE 175], which the Court granted on that same day. [DE 176.] On June 5, 2013, Plaintiff filed its Eighth Application for TRO. [DE 177.] On August 8, 2013,[5] this Court granted Plaintiff's Eighth Application for TRO [DE 190], and subsequently converted the temporary restraining order into a Preliminary Injunction on August 19, 2013. [DE 195.] The Temporary Restraining Order and Preliminary Injunction required, *inter alia*, PayPal to freeze all accounts and to divert to a holding account for the trust of the Court all funds currently in, or which during the pendency of the Order come in to, Defendants' PayPal accounts. PayPal complied with the requirements of the Court's Orders and restrained the funds related to Defendants, including an identified amount of $90,937.35. (See Declaration of Stephen M. Gaffigan in Support of Plaintiff's Fourth Motion for Entry of Final Default Judgment (hereafter, "Gaffigan Decl. in Support of Fourth FDJ" ¶ 6.)

---

[5] Additionally, on August 8, 2013, the Court entered an Order Granting Plaintiff's *Ex Parte* Motion for Leave to File Plaintiff's Seventh Amended Complaint [DE 188], and the Clerk of Court entered Plaintiff's Seventh Amended Complaint for Damages and Injunctive Relief on the docket that same day. [DE 189.]

Pursuant to the Court's Order Court's Order Granting Plaintiff's *Ex Parte* Motion in Further Support of Plaintiff's Motion to Amend the Court's Order Granting Second Motion for Alternate Service [DE 176], Plaintiff served each Defendant with a copy of their respective Summons, and copies of the Complaint, First, Second, Third, Fourth, Fifth, Sixth, and Seventh Amended Complaints via e-mail and/or via publication service on August 20, 2013. (See Gaffigan Decl. in Support of Fourth FDJ ¶ 7.) Plaintiff filed the Proofs of Service as to Defendants on August 23, 2013. [DE 197; DE 198.]

Plaintiff filed its Request for Clerk's Entry of Default on September 17, 2013. [DE 201]. On September 18, 2013, the Clerk of Court, pursuant to Rule 55(a) of the Federal Rules of Civil Procedure, entered default against Defendants for failure to appear, plead, or otherwise defend this action. [DE 202.] To date, Defendants have not sought to vacate the default or otherwise appear and defend this action. Plaintiff now moves the Court to grant Default Final Judgment against Defendants.

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure 55(b)(2) authorizes a court to enter a default judgment against a properly served defendant, who, like Defendants here, failed to file a timely responsive pleading. By such a default, all of Plaintiff's well-pled allegations in the Complaint are deemed admitted. *See Buchanan v. Bowman*, 820 F.2d 359, 361 (11th Cir. 1987); *Petmed Express, Inc. v. Medpots.com*, 336 F. Supp. 2d 1213, 1217 (S.D. Fla. 2004). If the admitted facts in the Complaint establish liability, then the Court must determine appropriate damages. Where all the essential evidence is on record, an evidentiary hearing on damages is not required. *See SEC v. Smyth*, 420 F.3d 1225, 1232 n. 13 (11th Cir. 2005) ("Rule 55(b)(2) speaks of evidentiary hearings in a permissive tone . . . We have held that no such hearing is required where all

essential evidence is already of record.") (citations omitted); *see also Petmed Express*, 336 F. Supp. 2d at 1223 (entering default judgment, permanent injunction and statutory damages in a Lanham Act case without a hearing). In this case, a hearing on damages is unnecessary as Plaintiff seeks statutory damages and has submitted detailed declarations with accompanying documentary evidence in support of its damages request.

### III.   LIABILITY

#### A.   Trademark Infringement

The allegations in Plaintiff's Seventh Amended Complaint, in conjunction with record evidence, support a finding of liability against Defendants for trademark infringement. "[T]o prevail on a trademark infringement claim a plaintiff must demonstrate that (1) its mark has priority; (2) defendant used its mark in commerce [without consent]; and (3) defendant's mark is likely to cause consumer confusion." *Petmed Express*, 336 F. Supp. 2d at 1217-18 (citing *Int'l Cosmetics Exch., Inc. v. Gapardis Health & Beauty, Inc.*, 303 F.3d 1243 (11th Cir. 2002) and *Frehling Enter., Inc. v. Int'l Select Group, Inc.*, 192 F.3d 1330 (11th Cir. 1999)). Plaintiff has established each of these elements because: (1) Plaintiff's ownership and registration of the trademarks at issue precede Defendants' infringing conduct (Seventh Amended Complaint ¶ 62; Hahn Decl. ¶ 4); (2) Defendants advertised, offered for sale and/or sold goods bearing Plaintiff's marks in interstate commerce without Plaintiff's consent (Seventh Amended Complaint ¶ 71; *see also* Hahn Decl. ¶¶ 9-13 and Composite Exhibit C attached thereto [DE 177-10]; Rosaler Decl. ¶ 4 and Composite Exhibit A thereto; Burns Decl. and Composite Exhibit A thereto; *see generally* Defendants' Websites and E-Stores attached as Composite Exhibit B to the Hahn Decl.); and (3) the marks used on the goods Defendants advertised, offered for sale and/or sold are so similar to Plaintiff's marks that consumer confusion is likely. (Seventh Amended Complaint ¶¶ 59, 71, 72,

79); *see also* Hahn Decl. ¶¶ 9-13 and Composite Exhibit C attached to the Hahn Decl.; Rosaler

Decl. ¶ 4 and Composite Exhibit A thereto; Burns Decl. ¶ 4 and Composite Exhibit A thereto;

*see generally* Defendants' Websites and E-Stores attached as Composite Exhibit B to the Hahn

Decl.)

    **B.**    **False Designation of Origin**

    Plaintiff alleges false designation of origin under § 43(a) of the Lanham Act, 15 U.S.C. §

1125(a). That section provides as follows:

> Any person who, on or in connection with any goods or services, or any container
> for goods, uses in commerce any word, term, name, symbol, or device, or any
> combination thereof, or any false designation of origin, false or misleading
> description of fact, or false or misleading representation of fact, which–
>
> > (A) is likely to cause confusion, or to cause mistake, or to deceive as to the
> > affiliation, connection, or association of such person with another person,
> > or as to the origin, sponsorship, or approval of his or her goods, services,
> > or commercial activities by another person, or
> >
> > (B) in commercial advertising or promotion, misrepresents the nature,
> > characteristics, qualities, or geographic origin of his or her or another
> > person's goods, services, or commercial activities, shall be liable in a civil
> > action by any person who believes that he or she is or is likely to be
> > damaged by such act.

15 U.S.C. § 1125(a)(1).

    The same set of facts allowing Plaintiff to prevail under § 1114(1)(a) will result in

recovery under § 1125. *See Babbit Elecs.*, 38 F.3d at 1181 (11th Cir. 1994) (citing *Marathon*

*Mfg. Co. v. Enerlite Prods. Corp.*, 767 F.2d 214, 217 (5th Cir. 1985)); *see also Clairol Inc. v.*

*Save-Way Indus., Inc.*, 210 U.S.P.Q. 459, 469-70 (S.D. Fla. 1980). "This is because Section

1125(a) is broader than Section 1114 in that it covers false advertising or description whether or

not it involves trademark infringement." *Babbit Elecs.*, 38 F.3d at 1181 (citing *Silverstar Enters.,*

*Inc. v. Aday*, 537 F. Supp. 236 (S.D.N.Y. 1982)). As with trademark infringement claims, the test

for liability for false designation of origin under § 43(a) is also "whether the public is likely to be deceived or confused by the similarity of the marks at issue." *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 780, 112 S. Ct. 2753, 763 (1992). As discussed above, Plaintiff has sufficiently shown there is a strong likelihood of confusion that arises because of the use by Defendants of the Chanel Marks. Thus, Plaintiff is entitled to default judgment on its false designation of origin claim.

C.    **Cybersquatting**

The Anticybersquatting Consumer Protection Act ("ACPA"), 15 U.S.C. § 1125(d), imposes liability upon a person for the bad faith intent to profit from a protected mark by registering or using a domain name that is identical or confusingly similar, or dilutive of, that mark. *Petmed Express*, 336 F. Supp. 2d at 1218. To prevail under 15 U.S.C. § 1125(d), Plaintiff must demonstrate that "(1) its mark is distinctive or famous and entitled to protection; (2) the Defendant's domain name is identical or confusingly similar to the Plaintiff's mark; and (3) the Defendant registered or used the domain name with a bad faith intent to profit." *Bavaro Palace, S.A. v. Vacation Tours, Inc.*, 203 Fed. App'x. 252, 256 (11th Cir. 2006).  In this case, the well-pled allegations demonstrate Plaintiff's Marks are distinctive and famous, that the infringing domain names are confusingly similar, and that Defendants registered the cybersquatting domain names with the bad-faith intent to profit from them. As such, Defendants are liable for cybersquatting under 15 U.S.C. § 1125(d).

D.    **Common Law Unfair Competition**

Whether a defendant's use of the plaintiff's trademarks created a likelihood of confusion between plaintiff's and defendant's products is also the determining factor in the analysis of unfair competition under the common law of Florida. *Rolex Watch U.S.A., Inc. v. Forrester*, No.

83–8381–Civ-Paine, 1986 WL 15668, at *3 (S.D. Fla. Dec. 9, 1987) ("The appropriate test for determining whether there is a likelihood of confusion, and thus trademark infringement, false designation of origin, and unfair competition under the common law of Florida, is set forth in *John H. Harland, Inc. v. Clarke Checks, Inc.*, 711 F.2d 966, 972 (11th Cir. 1983.)") Plaintiff has established there is a likelihood of confusion regarding Defendants' use of the Chanel Marks on their counterfeit and infringing products. Accordingly, Plaintiff has succeeded on the merits of its common law unfair competition claim.

## IV.   INJUNCTIVE RELIEF

Plaintiff is entitled to the requested injunctive relief pursuant to 15 U.S.C. § 1116 and 17 U.S.C. § 502.  A plaintiff seeking a permanent injunction must demonstrate that (1) it has suffered an irreparable injury; (2) remedies at law, such as monetary damages, are inadequate to compensate for that injury; (3) considering the balance of hardship between plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction. *See eBay, Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006).

Here, the well-pled allegations and record evidence demonstrate that Plaintiff has developed goodwill among the consuming public which would be undermined if Defendants are not prohibited from further infringement. Defendants' counterfeit products will create irreparable harm and confusion, particularly because the counterfeit products bear identical markings as Plaintiff's genuine merchandise, and are not manufactured to Chanel's quality standards. Furthermore, Defendants willfully infringed the Chanel Marks and continued to do so even after service of the Complaints in this matter upon them.  Such willful conduct demonstrates a likelihood that Defendants would continue to harm Plaintiff's trademarks if the Court declined to

issue an injunction. *Petmed Express*, 336 F.Supp. 2d 1222-23 (entering permanent injunction under 15 U.S.C. § 1116 to prevent further infringement of federally-protected trademarks).

### V.    DAMAGES

**A.    Statutory Damages for the Use of Counterfeit Marks**

In a case involving the use of counterfeit marks in connection with a sale, offering for sale, or distribution of goods, 15 U.S.C. § 1117(c) provides that a plaintiff may elect an award of statutory damages at any time before final judgment is rendered in the sum of not less than $1,000.00 and not more than $200,000.00 per counterfeit mark per type of good.  In addition, if the Court finds that Defendant's counterfeiting actions were willful, it may impose damages above the maximum limit up to $2,000,000.00 per mark per type of good. 15 U.S.C. § 1117(c)(2). A statutory damage award is appropriate in a case where the defendant has defaulted. *See Petmed Express*, 336 F.Supp 2d at 1219-22.   Pursuant to 15 U.S.C. § 1117(c), Plaintiff elects to recover an award of statutory damages as to Count I of the Seventh Amended Complaint.

The Court has wide discretion to set an amount of statutory damages. *Id. at* 1219 (citing *Cable/Home Commc'n Corp. v. Network Prod., Inc.*, 902 F.2d 829, 852 (11th Cir. 1990) (concluding that the court's discretion in setting the amount of copyright damages is "wide, constrained only by the specified maxima and minima")).  Congress enacted a statutory damages remedy in trademark counterfeiting cases, because evidence of a defendant's profits in such cases is almost impossible to ascertain. *See e.g.,* S. REP. NO. 104-177, pt. V(7) (1995) (discussing purposes of Lanham Act statutory damages.).  This case is no exception.  Since Defendants have refused to participate in this litigation, Plaintiff has been deprived of the ability to obtain discovery from them.

In this case, Plaintiff is entitled to a statutory award of **$6,000.00** per Chanel Mark counterfeited (20) per type of goods sold (15 - handbags, wallets, shoes, boots, belts, scarves, sunglasses, watches, cases for telephones, protective covers for portable electronic devices, including cell phones, cosmetics, and costume jewelry, including necklaces, bracelets, earrings and rings). Thus the Court shall award **$1,800,000.00** in statutory damages pursuant to 15 U.S.C. § 1117.[6]

### B.    Statutory Damages for Cybersquatting

Plaintiff also seeks damages for violation of the Anticybersquatting Consumer Protection Act.  Upon a finding of liability for cybersquatting pursuant to 15 U.S.C. § 1125(d)(1), "the plaintiff may elect, at any time before final judgment is rendered by the trial court, to recover, instead of actual damages and profits, an award of statutory damages in the amount of not less than $1,000 and not more than $100,000 per domain name, as the court considers just." 15 U.S.C. § 1117(d).

Here, Plaintiff seeks statutory damages in the amount of $10,000.00 for each of the twenty-four (24) domain names violating the provisions of 15 U.S.C. 1125(d)(1) for a total award of $240,000.00. Defendants' registration of the Infringing Subject Domain Names[7] is in bad faith and violates 15 U.S.C. § 1125(d). (Seventh Amended Complaint ¶¶ 80, 107.)  In view of Defendants' intentional, wrongful conduct, the Court finds that Plaintiff's request is reasonable. *See Taverna Opa Trademark Corp. v. Ismail*, Case No. 08-20776-CIV, 2010 WL 1838384, at *3 (S.D. Fla. May 6, 2010) (awarding $10,000.00 in statutory damages for domain name at issue). Thus, the Court shall award Plaintiff **$240,000.00** in statutory damages pursuant to 15 U.S.C. § 1117(d).

---

[6] In determining the appropriate damages award, the Court also considered the demonstrated willfulness of Defendants' infringement.

[7] The Infringing Subject Domain Names are identified on Schedule "B" hereto.

## VI.   <u>CONCLUSION</u>

For the reasons stated above, it is hereby

ORDERED THAT

Plaintiff's Fourth Motion for Entry of Final Default Judgment [DE 207] is **GRANTED**. The Court shall concurrently enter Final Default Judgment against Defendants identified on Schedule "A" hereto.

DONE AND ORDERED in Miami, Florida, this 31st day of January, 2014.

PATRICIA A. SEITZ
UNITED STATES DISTRICT JUDGE

cc:    All Counsel of Record

**SCHEDULE "A"**
**DEFENDANTS BY NUMBER AND**
**GROUP VIII SUBJECT DOMAIN NAMES AND E-STORES**

| Defendant Number | Defendant/Subject Domain Name and E-Store |
| --- | --- |
| 132 | mensjewellerystores.com |
| 155 | igogoshopping.com |
| 215 | chaneloutletsaleshop.com |
| 216 | 4youstyle.com |
| 217 | 93bab.com |
| 218 | aaabags4u.com |
| 219 | bagsdotcome.com |
| 220 | bijouxchanel.org |
| 221 | diy71.com |
| 222 | bisangliu.com |
| 223 | chanelbagsukmall.com |
| 224 | chanelclassicflapbag.com |
| 224 | chanelcom.com |
| 224 | chanelhandbags2013.com |
| 224 | cheapchanelwallet.com |
| 225 | chanelsac.org |
| 225 | chanelsacspascher.org |
| 225 | lessacschanel.com |
| 226 | cheapbrandsforsale.com |
| 227 | cheapchanelbagsale.org |
| 228 | cheapchinashopping.com |
| 229 | cheapgrandtrade.net |
| 229 | yannashop.com |
| 229 | yannatrade.net |
| 230 | cheapmax2013.com |
| 231 | ouyatrademall2013.com |
| 232 | diytrade88.com |
| 232 | nicediytrade.com |
| 233 | ecgo-shopping.com |
| 234 | efoto88.com |
| 234 | focushoping.com |
| 235 | etradebag.com |
| 236 | eurobrands.cc |
| 237 | hellochanelbags2013.com |

| Defendant Number | Defendant/Subject Domain Name and E-Store |
|---|---|
| 238 | hotshoptrade.com |
| 239 | kikipumps.com |
| 240 | louisvuittonredbottomshoes.com |
| 241 | lvlouis.com |
| 242 | markebags.com |
| 242 | buyzshop.com |
| 243 | muchbag.com |
| 244 | mychanelbags.com |
| 245 | very-trade.com |
| 246 | purstyles.com |
| 247 | selectbags.net |
| 248 | shoesdisplaycn.com |
| 248 | wholesalerexport.com |
| 249 | soloffer2008.com |
| 250 | france-marque.com |
| 250 | thebolsoschanel.info |
| 250 | theborsechanel.info |
| 250 | thelouisvuittonbolsos.com |
| 250 | uhrenmarken1.com |
| 250 | vuittonborseonline.com |
| 250 | boutiquesfrance.com |
| 250 | sacschanelboutiques.org |
| 251 | trade778.com |
| 252 | ukchanelbags-outlet.com |
| 253 | tradeseaside8.com |
| 253 | vipvoguelife.com |
| 254 | wholesalesmakeups.com |
| 255 | fashioncenter365.com |
| 255 | mallstock.biz |
| 255 | mallstock.co |
| 255 | wholesale-jordansshoes.com |
| 256 | ebbagg.co |
| 256 | ebbaggs.com |
| 256 | jessicasbag.com |
| 257 | essentialzgroup.com |
| 258 | dwinfair.com |
| 259 | nnsale.net |

| Defendant Number | Defendant/Subject Domain Name and E-Store |
|---|---|
| 260 | stillcart.com |
| 261 | bestreplicabagsonline.com |
| 261 | replicabagonsale.com |
| 262 | chanel2us.com |
| 262 | chanel4us.com |
| 262 | chanellcom.com |
| 262 | xchanelbags.com |
| 262 | xchanelpurses.com |
| 263 | comprarbolsoschanel.com |
| 264 | handbagschn.com |
| 265 | handbags--store.com |
| 266 | scarpechanel.com |
| 267 | qsxcvb2010 |
| 268 | cheapstore168 |
| 269 | win2010 |
| 270 | stalker519 |
| 271 | kulidehk353 |
| 272 | rayban2011 |
| 273 | tongfa123 |
| 274 | xixi2005 |
| 275 | greatsell |
| 276 | virginiafu |
| 277 | yy_bo |
| 278 | newebay |
| 279 | mazhen |
| 280 | love2011 |
| 281 | luckday |
| 282 | fallinfashion |
| 283 | honesbusiness |
| 284 | asics_onitsuka_tiger |
| 285 | cheers |
| 286 | good wish |
| 287 | goodluck2011 |
| 288 | donglang2010 |
| 289 | ringaa08 |
| 290 | likelegantlive |
| 291 | superseller518 |

| Defendant Number | Defendant/Subject Domain Name and E-Store |
|---|---|
| 292 | fashion888 |
| 293 | hero |
| 294 | numb |
| 295 | paypal-seller |
| 296 | wholesale-i |
| 297 | 7stars |
| 298 | llkkstyle96188 |
| 299 | flagship2011 |
| 300 | yuan5588558 |
| 301 | vicky-aple |
| 302 | company |
| 303 | huihuang188 |
| 304 | yijiaxingsheng |
| 305 | xiongmao518 |
| 306 | beijing |
| 307 | xuehui988 |
| 308 | lovelydog |
| 309 | amigoodluck |
| 310 | kaitoushun518 |
| 311 | yahoo |
| 312 | greatdream510 |
| 313 | ilovemyhome |
| 314 | oudeguaibaobei |
| 315 | renshengdeyi |
| 316 | dennis2010 |
| 317 | surprise |
| 318 | lishi988 |
| 319 | binbin125 |
| 320 | meibin668998 |
| 321 | edhardy |
| 322 | xiayizhan698 |
| 323 | yibenwanli |
| 324 | mary16889 |
| 325 | great_deal |
| 326 | lingfeng19 |
| 327 | vivi88 |
| 328 | maotou |

| Defendant Number | Defendant/Subject Domain Name and E-Store |
|------------------|-------------------------------------------|
| 329 | zhe2255188 |
| 330 | enjoybags888 |
| 331 | gongxifacai001 |
| 332 | guolicheng2010 |
| 333 | gaoshangren88 |

**SCHEDULE "B"**
**INFRINGING SUBJECT DOMAIN NAMES**

| Defendant Number | Domain Name |
|---|---|
| 215 | chaneloutletsaleshop.com |
| 220 | bijouxchanel.org |
| 223 | chanelbagsukmall.com |
| 224 | chanelclassicflapbag.com |
| 224 | chanelcom.com |
| 224 | chanelhandbags2013.com |
| 224 | cheapchanelwallet.com |
| 225 | chanelsac.org |
| 225 | chanelsacspascher.org |
| 225 | lessacschanel.com |
| 227 | cheapchanelbagsale.org |
| 237 | hellochanelbags2013.com |
| 244 | mychanelbags.com |
| 250 | thebolsoschanel.info |
| 250 | theborsechanel.info |
| 250 | sacschanelboutiques.org |
| 252 | ukchanelbags-outlet.com |
| 262 | chanel2us.com |
| 262 | chanel4us.com |
| 262 | chanellcom.com |
| 262 | xchanelbags.com |
| 262 | xchanelpurses.com |
| 263 | comprarbolsoschanel.com |
| 266 | scarpechanel.com |